BROCKHAUSEN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department.    October 6, 1911.)

MASTER AND SERVANT (§ 112*)—DEATH OF SERVANT—RAILROADS—NEGLIGENCE.

Decedent, a railroad fireman, while riding with his head out of the window of the engine, was struck by some part of another train in passing, and received injuries from which he died. The casualty occurred at a point after the train had emerged from a tunnel, where the cleared space between the two tracks had been narrowed to 6 feet 1 or 2 inches, instead of 7 feet, and in consequence the clearance of the cabs of passing locomotives was 2 feet 3½ inches, instead of the "standard clearance" of 3 feet 3 inches to 3 feet 6 inches. The accident occurred in the daytime, and decedent had a clear view of the passing train for 200 yards. There was no proof that there existed any duty for decedent which required the attitude he assumed; or that in the reasonable discharge of his duties there was any necessity of his placing himself in such jeopardy. *Held*, that the mere narrowing of the clear space between the tracks under such circumstances was not actionable negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 218–223; Dec. Dig. § 112.*]

Appeal from Trial Term, Dutchess County.

Action by Mary Brockhausen, as administratrix of the estate of Louis Brockhausen, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

John F. Brennan, for appellant.
Charles Morschauser, for respondent.

JENKS, P. J. The appeal is by a master from a judgment against it for negligence whereby its servant was killed. Plaintiff's intestate was defendant's fireman upon one of its trains. His term of service had been long. Doubtless he was struck by some part of another train in passing. The plaintiff's witness Murphy, a brakeman on the second train, as the two trains approached one another, saw the intestate with his head out of the window of the cab of the locomotive. The engineer with the intestate, called by the defendant, testifies that the first indication to him of an accident was when he saw the intestate's feet "go up, and it struck me right away that there was something wrong, and I reached over and took him by the seat of the pants and pulled him in, and then I shut the engine off. He was out of the window. I pulled him back." There is no other testimony direct as to the casualty. The conditions of passage were normal.

The negligence charged against the defendant is improper construction of its road at the point of accident, and improper construction of its locomotive engines. The latter charge we may regard as negligible, for there is no evidence to support it. There is evidence to refute it, and the case was tried and submitted upon the first negligence assigned. Incident to construction through a tunnel, it appeared

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that some two or three years before the casualty the tracks in the tunnel had been put down nearer together than was usual on those parts of the road where there was not the complication of tunnel construction, and that it was a mile and a quarter beyond the tunnel before the tracks were laid apart normally. The casualty occurred within this territory, so that at the point of this passing of these trains the space between the tracks was about 6 feet 1 or 2 inches, instead of 7 feet, and in consequence the clearance of the cabs of passing locomotive engines at that point was 2 feet 3½ inches, instead of the "standard clearance" of from 3 feet 3 inches to 3 feet 6 inches. There is no proof that permits the inference that the intestate would have been injured if his head had been less than 2 feet 3½ inches outside of the cab window, so we must conclude that he was injured because he had thrust out his head beyond that distance.

The obligation of the master was due care for the safety of the servant when about his master's work. Shearman & Redfield on Negligence (5th Ed.) §§ 189, 195, and cases cited. The mere fact that it had laid down its tracks at this point, so that the space between passing trains was scanter than usual on that road, would not sustain a charge of negligence, unless the master foresaw, or in the exercise of due care should have foreseen, that a servant, when about its business and in the exercise of due care on his part, might thrust out his head from the cab window beyond this space allowed for passing trains, to his peril. There is not sufficient proof in this case, either that there existed any duty for the intestate which required his attitude, or that in the reasonable discharge of any duty the intestate might place himself in such jeopardy. Of course, he might have put out his head for some purpose entirely foreign to any duty cast upon him. This case is not complicated by the conditions of the darkness of night, or of the sudden sweep into sight of an oncoming train; for the evidence is that the casualty occurred in the daytime, that there was a clear view to the intestate for 200 yards, and that the said brakeman saw the intestate with his head projected outside the cab window when the trains were 100 yards apart.

The plaintiff's contention that the servant was watching the injector is surmise, which would locate him in an act of service from the fact that he had his head outside of the window, looking down. But the very great preponderance of the evidence is that the intestate could have discharged his full duty as to the injector without thrusting out his head at all. The learned court charged the jury without exception that the construction of the engine and of all its appliances, including the injector and the overflow pipe, were in good order. Even if there was evidence for the conclusion that the intestate was in inspection of the injector, there is no testimony that he would have been justified in thrusting out his head so far as to be in peril of a passing train.

I think, then, that the plaintiff failed to make out a case of negligence, and that there must be a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.